J. SCOTT MOEDE, Oregon State Bar ID Number 934816
Senior Deputy City Attorney
Email: scott.moede@portlandoregon.gov
KENNETH A. MCGAIR, Oregon State Bar ID Number 990148
Deputy City Attorney
Email: kenneth.mcgair@portlandoregon.gov
Office of City Attorney
1221 SW Fourth Avenue, Room 430
Portland, OR  97204
Telephone: (503) 823-4047
Facsimile:  (503) 823-3089
Of Attorneys for Defendants

# UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

### PORTLAND DIVISION

| | |
|---|---|
| **SPEED'S AUTO SERVICES GROUP, INC**., d/b/a Towncar.com, an Oregon Corporation, and **FIESTA ENTERPRISES, LLC,** d/b/a Fiesta Limousine, an Oregon Limited Liability Company, | 3:12-CV-00738 AC |
| **PLAINTIFFS,** | **MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' RULE 12 MOTIONS TO DISMISS PLAINTIFFS' COMPLAINT** |
| v. | |
| **CITY OF PORTLAND OREGON, CITY OF PORTLAND REVENUE BUREAU, PRIVATE FOR-HIRE TRANSPORTATION BOARD OF REVIEW,** and **THOMAS LANNOM,** in his official capacity as Revenue Bureau Director, | |
| **DEFENDANTS.** | |

Defendants submit this memorandum of law in support of their motion to dismiss plaintiffs' Complaint.

Page  1  –   MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' RULE 12 MOTIONS TO DISMISS PLAINTIFFS' COMPLAINT

## I.  INTRODUCTION

In this case, plaintiffs dispute the manner in which the City of Portland regulates Executive Sedan and Limousine companies compared with the manner in which it regulates Taxicab companies.  Portland regulates limousine and sedan companies and taxicabs in Chapter 16.40 of its City Code ("PCC 16.40") (see Exhibit A to the Affidavit of J. Scott Moede) and administrative rules promulgated by the Private For-Hire Transportation Board of Review ("PFH Board") (see Exhibit B to the Affidavit of J. Scott Moede).  Plaintiffs challenge three requirements in the City Code and Administrative Rules that pertain to executive sedan and limousine service.  These three requirements are:  1) a $50 minimum trip fare for trips from downtown Portland to the airport; 2) 35% increased fares for limousines and sedans; and 3) 60 minute wait times between request for service and pick up.  These three requirements are promulgated through three City of Portland Code provisions and two Board Rules.

### A.  $50 Minimum Trip Fare

The first challenged Code provision and administrative rule dictates that executive sedan and limousine companies must charge at least $50.00 for trips between Portland's Fareless Square and Portland International Airport.  (Portland City Code 16.40.480(A), and Private For-Hire Administrative Rule 16.40.480-1.)

### B.  35% increased fare

The second challenged Code provision mandates that, for trips other than those between the City and Portland International Airport, executive sedan and limousine companies must charge at least 35% more than a taxicab would charge for that same trip.  (Portland City Code 16.40.480(C).)

### C.  60 minute wait period

The third challenged Code provision and administrative rule states that all executive sedan and limousine services must be prearranged, meaning that 60 minutes must pass between the time that a reservation is made and the time that the customer is transported. (Portland City Code 16.40.460(A), Private For-Hire Administrative Rule 16.40.460-1.)

Page  2  –    MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' RULE 12 MOTIONS
TO DISMISS PLAINTIFFS' COMPLAINT

Plaintiffs allege in their Complaint that these Code provisions and administrative rules "deny Plaintiffs their economic liberty – the right to pursue their chosen occupation free from unreasonable government restrictions – in violation of the Fourteenth Amendment to the United States Constitution." (*See Complaint, docket no. 1, at ¶73.*)  Plaintiffs allege three causes of action in their Complaint for the alleged violation of their constitutional rights.  Those causes of action are:  1) Equal Protection of Law under the 14th Amendment (First Cause of Action, ¶¶ 76-84); 2) Substantive Due Process under the 14th Amendment (Second Cause of Action, ¶¶ 85-91) and 3) Privileges or Immunities under the 14th Amendment (Third Cause of Action, ¶¶ 92-97). Specifically, plaintiffs allege that the Code provisions and administrative rules constitute a "deprivation of their right to equal protection of the laws, deprivation of their substantive due process right to earn an honest living free from unreasonable government interference, and deprivation of the privileges and immunities of citizenship."  (*See Complaint at ¶73.*)

Plaintiffs allege that the Code provisions and administrative rules outlined above violate their substantive due process rights and their privileges or immunities rights because they protect taxicab businesses from competition at the expense of plaintiffs' businesses.  (*See Complaint at ¶¶83, 90.*)  Plaintiffs further allege that the Code provisions and administrative rules mentioned above violate their equal protection rights because the laws "exempt taxicabs and other private for-hire transportation vehicles from comparable minimum fares" and that "any legitimate rationale for [the laws] is rendered irrational by virtue of the exemptions for other private for-hire transportation vehicles."  (*See Complaint at ¶¶79-82.*)

Defendants ask this Court to dismiss all three causes of action because plaintiffs fail to state a claim that entitles them to relief.  The arguments supporting this request for dismissal are outlined below and addressed in reverse order as found in the Complaint; beginning with the cause of action for privileges or immunities (Third Cause of Action), then moving to Substantive Due Process (Second Cause of Action) and then finally analyzing the cause of action for Equal Protection (First Cause of Action).

Page  3  –    MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' RULE 12 MOTIONS
TO DISMISS PLAINTIFFS' COMPLAINT

## II.    MOTION TO DISMISS STANDARDS AND STANDARD FOR INCLUDING EVIDENCE FROM THE COMPLAINT

When analyzing a motion to dismiss under FRCP 12(b)(6), the Court must accept as true the factual allegations contained in the Complaint and construe them in the light most favorable to the plaintiff.  *Mishler v. Clift,* 191 F.3d 998, 1003 (9th Cir. 1999).  To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain sufficient facts that "state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 1949 (2009)(*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal,* 556 U.S. at 678, 129 S.Ct. at 1949.  "A federal claimant is not required to detail all factual allegations; however, the complaint must provide 'more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.'"  *Twombly,* 550 U.S. at 544, 555, 127 S.Ct. at 1955, 1965.  "Factual allegations must be enough to raise a right to relief above the speculative level."  *Id.*  "This standard does not require detailed factual allegations, but does demand more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Iqbal,* 556 U.S. at 678, 129 S.Ct. at 1949.

"Although generally the scope of review on a motion to dismiss for failure to state a claim is limited to the Complaint, a court may consider evidence on which the 'complaint necessarily relies' if: (1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the copy attached to the 12(b)(6) motion."  *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010) (*quoting Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006)); *see also* FRE 201.  "The court may treat such a document as part of the complaint, and thus may assume that its contents are true for purposes of a motion to dismiss under Rule 12(b)(6)."  *Id.* (internal quotations omitted).  Here, defendants have included the City Code provisions and administrative rules.  (See Exhibits A and B, Moede Affidavit.)

Page  4  –    MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' RULE 12 MOTIONS TO DISMISS PLAINTIFFS' COMPLAINT

## III.    ARGUMENT

### A.    Privileges or Immunities

Plaintiffs' third cause of action is labeled "Privileges or Immunities" and is found in paragraphs 92-97 of the Complaint.  Plaintiffs claim that the $50 minimum fare, 35% increased fare and 60 minute wait period violate plaintiffs "privileges or immunities under the Fourteenth Amendment to the U.S. Constitution."  (*See Complaint, ¶¶ 93-95.*)  The analysis of this cause of action is addressed first in this memorandum as there should be little dispute that current Supreme Court precedent mandates dismissal with prejudice of this third cause of action.

The Privileges or Immunities Clause of the 14th Amendment to the U.S. constitution has traditionally protected only those rights accruing by virtue of being a citizen of the United States. *Paciulan v. George*, 229 F.3d 1226, 1229 (9th Cir. 2000) (*citing* the *Slaughter–House Cases,* 83 U.S. (16 Wall.) 36, 21 L.Ed. 394 (1872).  The *Slaughter-House Cases* effectively barred Privileges or Immunities claims against the power of the State governments over the rights of their own citizens.  *See Merrifield v. Lockyer*, 547 F.3d 978, 983 (9th Cir. 2008).  The Privileges or Immunities clause only secures those rights which "own their existence to the Federal government, its National character, its Constitution, or its laws." *Id.* (*quoting Slaughter House Cases,* 83 U.S. (16 Wall.) at 79, 21 L.Ed. 394).  The courts and legal commentators have interpreted the *Slaughter House* decision as rendering the Privileges or Immunities Clause essentially nugatory.  *Paciulan*, 229 F.3d 1226, 1229 (9th Cir. 2000)(internal citations removed).

*Saenz v. Roe* represents the only qualification the Court has made on this bar, which granted "travelers who elect to become permanent residents [of a State] the right to be treated like other citizens of that State." *Merrifield*, 547 F.3d at 984 (*quoting Saenz v. Roe*, 526 U.S. 489, 500, 119 S.Ct. 1518 (1999)).  Further, "the Court made it very clear that the traditional privileges and immunities of citizenship 'which are, in their nature, fundamental; which belong, of right, to the citizens of all free governments,' such as the right to engage in one's profession of choice, *see Corfield v. Coryell,* 6 F.Cas. 546, 551-52 (C.C.E.D.Pa.1823), were not protected by

Page 5 –    MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' RULE 12 MOTIONS
            TO DISMISS PLAINTIFFS' COMPLAINT

the Privileges or Immunities Clause if they were not of a 'federal' character. *Slaughter-House Cases,* 83 U.S. (16 Wall.) at 78-79." *Merrifield,* 547 F.3d at 983.

Plaintiffs make no allegation in their Complaint that any defendant has violated their right to travel or impinged on rights which "own their existence to the federal government, its National character, its Constitution, or its laws." *Slaughter House*, 83 U.S. (16 Wall.) at 79, 21 L.Ed 394. Therefore, plaintiffs' Privileges or Immunities cause of action is barred by the decision in the *Slaughter House Cases* and this Court should dismiss this third cause of action with prejudice.

      B.    <u>Substantive Due Process</u>

Plaintiffs' second cause of action is labeled "Substantive Due Process" and is found in paragraphs 85-91 of the Complaint. Plaintiffs claim that the $50 minimum fare, 35% increased fare and 60 minute wait period violate plaintiffs "right to due process under the Fourteenth Amendment to the U.S. Constitution." (*See Complaint, ¶¶ 87-89.*) As will be outlined below, plaintiffs' Substantive Due Process cause of action should be dismissed with prejudice.

"Substantive due process refers to certain actions that the government may not engage in, no matter how many procedural safeguards it employs." *Baylock v. Schwinden,* 862 F.2d 1352, 1355 (9th Cir. 1988). "To state a substantive due process claim, the plaintiff must show as a threshold matter that a state actor deprived it of a constitutionally protected life, liberty or property interest." *Shanks v. Dressel*, 540 F.3d 1082, 1087 (9th Cir. 2008).

The Supreme Court utilizes a three tiered system when analyzing challenges brought under the Equal Protection and Due Process clauses of the 14th Amendment. When a statute infringes upon certain "fundamental rights," such as voting, abortion, procreation, marital privacy, or bodily integrity, the statute is subjected to strict scrutiny. *Washington v. Glucksberg*, 521 U.S. 702, 721, 117 S.Ct. 2258, 2268 (1997). "Fundamental rights are those which are deeply rooted in this nation's history and tradition and implicit in the concept of ordered liberty such that neither liberty nor justice would exist if they were sacrificed." *Id.* (internal quotations

Page 6 –    MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' RULE 12 MOTIONS
                 TO DISMISS PLAINTIFFS' COMPLAINT

and citations omitted).  To survive strict scrutiny, a regulation "must be narrowly tailored to promote a compelling governmental interest."  *Nunez by Nunez v. City of San Diego*, 114 F.3d 935, 946 (9th Cir. 1997)(*quoting Plyler v. Doe*, 457 U.S. 202, 217, 102 S.Ct. 2382, 2395 (1982)).

The second tier of analysis applies only to 14th Amendment's Equal Protection causes of action and utilizes an intermediate level of scrutiny when a regulation applies to disadvantaged classes that are not suspect classes and to important rights that are not fundamental rights, such as gender or illegitimacy.  *Nunez by Nunez,* 114 F.3d at 948 (*citing Plyler*, 457 U.S. at 223-24, 102 S.Ct. at 2397-98; *Mississippi Univ. for Women v. Hogan,* 458 U.S. 718, 724, 102 S.Ct. 3331, 3336 (1982); *Lalli v. Lalli,* 439 U.S. 259, 265, 99 S.Ct. 518, 523 (1978)).  For laws that are subject to intermediate scrutiny under the Equal Protection Clause, the classification must be "substantially related to an important government interest."  *Nunez by Nunez*, 114 F.3d at 948. Finally, all other regulations are subject to rational basis review, requiring only that the regulation bear some rational relation to a legitimate state interest.  *Romer v. Evans,* 517 U.S. 620, 635, 116 S.Ct. 1620, 1629 (1996).  Based on the allegations in the Complaint, there should be no dispute that this case presents rational basis review.

### 1.    Rational Basis Review Under Economic Substantive Due Process

With regard to substantive due process claims against regulation of economic interests, the Ninth Circuit has held "[t]here is no authority for the proposition that economic rights are fundamental, therefore claims of violations of economic rights are subjected to rational basis scrutiny."  *Bowers v. Whitman*, 671 F.3d 905, 916 (9th Cir. 2012).  Courts recognize that "the state has broad authority and discretion in the regulation of economic affairs."  *Llewellyn v. Crothers,* 765 F.2d 769, 775 (9th Cir. 1985)(*citing Williamson v. Lee Optical, Inc.*, 348 U.S. 483, 75 S.Ct. 461 (1955)).  A plaintiff faces an "extremely high burden" when challenging a regulation under the rational basis test.  *Shanks*, 540 F.3d at 1088.  "It is by now well established that legislative Acts adjusting the burdens and benefits of economic life come to the Court with a presumption of constitutionality, and that the burden is on one complaining of a due process

Page  7  –    MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' RULE 12 MOTIONS
               TO DISMISS PLAINTIFFS' COMPLAINT

violation to establish that the legislature has acted in an arbitrary and irrational way." *Garneau*, 147 F.3d at 821 (*citing Concrete Pipe & Products of California, Inc. v. Construction Laborers Pension Trust,* 508 U.S. 602, 637, 113 S.Ct. 2264 (1993)). "Substantive due process requires only that economic legislation be 'supported by a legitimate legislative purpose furthered by a rational means.'" *Garneau v. City of Seattle*, 147 F.3d 802, 821 (9th Cir. 1998) (*citing Pension Benefit Guarantee Corp. v. R.A. Gray & Co.,* 467 U.S. 717, 729, 104 S.Ct. 2709 (1984)).

To establish a substantive due process violation, plaintiffs must show that the regulations are "clearly arbitrary and unreasonable, having no substantial relation to the public health, safety, morals or general welfare." *Samson v. City of Bainbridge Island*, 2012 WL 2161371 (9th Cir. 2012)(*quoting Kawaoka v. City of Arroyo Grande*, 17 F.3d 1234 (9th Cir. 1994)).  In fact, "there is no denial of substantive due process if the question as to whether the government acted arbitrarily or capriciously is 'at least debatable.'" *Dodd v. Hood River Cnty.*, 59 F.3d 852, 864 (9th Cir. 1995) (*quoting Minnesota v. Clover Leaf Creamery Co.*, 449 U.S. 456, 469, 101 S.Ct. 715, 724 (1981)).  Indeed, the courts "do not require that the government's action actually advance its stated purposes, but merely look to see whether the government *could* have had a legitimate reason for acting as it did." *Wedges/Ledges of California, Inc. v. City of Phoenix, Ariz.,* 24 F.3d 56, 66 (9th Cir. 1994)(emphasis in original).  "The plaintiff must establish that the facts on which the legislature may have relied could not reasonably have been conceived as true by the governmental decisionmaker." *Lupert v. California State Bar*, 761 F.2d 1325, 1328 (9th Cir. 1985) (*citing Vance v. Bradley*, 440 U.S. 93, 111, 99 S.Ct. 939, 949 (1979)).

The Supreme Court has recognized "that the 'liberty component of the Fourteenth Amendment's Due Process Clause includes some generalized due process right to choose one's field of private employment.'" *Dittman v. California*, 191 F.3d 1020, 1029 (9th Cir. 1999) (*quoting Conn. v. Gabbert*, 526 U.S. 286, 291-92, 119 S.Ct. 1292 (1999).  The Supreme Court has held that "the right to hold specific private employment and to follow a chosen profession free from unreasonable governmental interference comes within the 'liberty' and 'property'

Page 8 –    MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' RULE 12 MOTIONS
              TO DISMISS PLAINTIFFS' COMPLAINT

concepts of the Fifth Amendment." *Greene v. McElroy*, 360 U.S. 474, 492, 70 S.Ct. 1400, 1411 (1959). The rational basis test is altered slightly when used to determine if a state may regulate entry into a profession. First, the regulation must completely prohibit the right to engage in a calling, not merely pose a brief interruption in one's ability to pursue an occupation or profession. *Dittman,* 191 F.3d at 1029. Then, "any such regulation must be rationally related, not merely to a legitimate state interest, but more specifically to the 'applicant's fitness or capacity to practice' the profession itself.'" *Dittman,* 191 F.3d at 1030-31 (*quoting Schware v. Board of Bar Exam. of State of N.M.,* 353 U.S. 232, 239, 77 S.Ct. 752 (1957)).

2.    Laws Surviving Rational Basis Review

The Supreme Court's classic iteration of rational basis scrutiny came in *Williamson v. Lee Optical*, 348 U.S. at 485-88, 75 S.Ct. 461 (1955), where the Court upheld a statutory scheme regulating the sale of eyeglasses which favored ophthalmologists and optometrists in private professional practice and disadvantaged opticians and others in the ready-to-wear portion of the market. The Court stated that though the law in question "may exact a needless, wasteful requirement in many cases," it was nevertheless valid because "it is enough that there is an evil at hand for correction, and that it might be thought that the particular measure was a rational way to correct it." *Id.* at 487-88, 348 S.Ct. 464. The Court further declared:

> The day is gone when this Court uses the Due Process Clause of the Fourteenth Amendment to strike down state laws, regulatory of business and industrial conditions, because they may be unwise, improvident, or out of harmony with a particular school of thought. . . . We emphasize again . . . , for protection against abuses by legislatures the people must resort to the polls, not to the courts.

*Id.* at 488, 348 S.Ct. 464.

In another early case, the Supreme Court upheld a state statute that fixed the price of milk. The court held that "it is . . . clear that if the legislative policy be to curb unrestrained and harmful competition by measures which are not arbitrary or discriminatory it does not lie with

//////

PORTLAND CITY ATTORNEY'S OFFICE
1221 SW 4TH AVENUE, RM 430
PORTLAND, OREGON 97204
(503) 823-4047

the courts to determine that the rule is unwise." *Nebbia v. People of New York*, 291 U.S. 502, 537, 54 S.Ct. 505, 516, 78 L. Ed. 940 (1934).  The court further declared that

> Where the public interest was deemed to require the fixing of minimum prices, that expedient has been sustained.  If the lawmaking body within its sphere of government concludes that the conditions or practices in an industry make unrestricted competition an inadequate safeguard of the consumer's interests, produce waste harmful to the public, threaten ultimately to cut off the supply of a commodity needed by the public, or portend the destruction of the industry itself, appropriate statutes passed in an honest effort to correct the threatened consequences may not be set aside because the regulation adopted fixes prices reasonably deemed by the Legislature to be fair to those engaged in the industry and to the consuming public.  And this is especially so where, as here, the economic maladjustment is one of price, which threatens harm to the producer at one end of the series and the consumer at the other.

*Id.* at 538, 54 S.Ct. 516.

In *Wedges/Ledges*, *supra,* 24 F.3d at 59, plaintiffs alleged that the City of Phoenix, Arizona, violated their substantive due process rights by temporarily banning arcade crane/claw amusement games and revoking existing licenses for crane games.  The plaintiffs claimed that the City's policies infringed upon their constitutional liberty interest in pursuing their occupation, with lost sales, lost profits, and lost business opportunities as their damages.  *Id.* at 60, 62.  The court noted that the fact that the City temporarily banned one type of game did not establish that the City unduly interfered with plaintiff's ability to pursue their livelihood in the amusement game industry.  *Id.* at 65.  The Ninth Circuit then upheld summary judgment in favor of the defendant, holding that plaintiffs did not show that they were "unable to pursue an occupation in the amusement game business."  *Id.*  The court went on to hold that even if the city had prevented plaintiffs from pursuing their chosen occupations, summary judgment still would have been proper because the City's policy was not clearly arbitrary.  *Id.*

In *Executive Town & Country Services, Inc. v. City of Atlanta*, 789 F.2d 1523, 1525 (11th Cir. 1986), the 11th Circuit upheld a city ordinance that enforced minimum fares that limousine companies must charge for trips to Atlanta Hartsfield Airport after plaintiffs claimed that the

Page  10  –    MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' RULE 12 MOTIONS
TO DISMISS PLAINTIFFS' COMPLAINT

ordinance violated due process and equal protection. Despite noting that "[t]he city's reasons for legislating [the] minimum fare regulations are not very compelling in a free market system," the court nonetheless upheld the ordinance because it passed the rational basis test, "albeit with little room for comfort." *Id.* at 1528.

In *Bokhari v. Metropolitan Government of Nashville and Davidson County*, slip copy, 2012 WL 1165907 (April 9, 2012), the District Court for the Middle District of Tennessee was presented with the same constitutional challenges to minimum fare provisions pertaining to executive sedan and town car service in Nashville. The District Court similarly held, "[a]las, what the Court may or may not think about the propriety of, or need for, a minimum fare is really of no moment. Legislative bodies "are accorded wide latitude in the regulation of their local economies under their police powers," they "may implement their program step by step in … economic areas, adopting regulations that only partially ameliorate a perceived evil," and "the judiciary may not sit as a superlegislature to judge the wisdom or desirability of legislative policy determinations made in areas that neither affect fundamental rights nor proceed along suspect lines." *Id., citing City of New Orleans v. Dukes*, 427 U.S. 297, 303 (1976).

3.    Plaintiffs Fail To State a Claim

A plaintiff must allege that a protected life, liberty or property interest has been violated to validly state a substantive due process claim. *Shanks,* 540 F.3d at 1087. Here, plaintiffs appear to allege that the City of Portland's Code provisions and rules violate a protected liberty interest. Plaintiffs' Complaint alleges that the Code provisions and rules at issue "deny Plaintiffs their economic liberty – the right to pursue their chosen occupation free from unreasonable government restrictions." (*See Complaint at ¶73.*) Two bases exist upon which this Court should dismiss plaintiffs' Substantive Due Process claims for failing to state a claim. First, plaintiffs fail to allege that the City's Code provisions and rules pose a complete barrier to their right to pursue their chosen profession. Second, the stated purpose of the Code provisions and rules sufficiently indicates a rational relation to a legitimate governmental interest to support dismissal.

Page 11 –  MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' RULE 12 MOTIONS
    TO DISMISS PLAINTIFFS' COMPLAINT

Plaintiffs fail to state a substantive due process claim because they fail to allege that the City's Code provisions and rules pose a complete barrier to their right to pursue their chosen profession.  To state a claim alleging a violation of the substantive due process right to pursue a profession, plaintiffs must allege that the Code provisions or rules pose a "complete prohibition of the right to engage in a calling."  *Dittman,* 191 F.3d at 1029.  Plaintiffs fail to allege that the Code provisions and rules prevent them from entering the for-hire transportation profession. Indeed, plaintiffs' Complaint states facts that indicate that their businesses are a going concern. (*See Complaint at ¶31*) ("Towncar.com operates sedans and SUV's for-hire . . . and holds a valid company permit and valid vehicle permits to do so."); (*Complaint at ¶46*) ("Fiesta operates a single sedan . . . and holds a valid company permit and a valid vehicle permit to do so.) Plaintiffs are lawfully engaged in the for-hire transportation business, and therefore the City of Portland is not preventing them from pursuing their chosen profession.  Accordingly, this Court should dismiss plaintiffs' substantive due process claim with prejudice because the City of Portland has not prevented entry into their chosen profession.

Plaintiffs' substantive due process claims should also be dismissed on the grounds that the stated purpose of the Code provisions and rules sufficiently indicates a rational relation to a legitimate governmental interest.  City of Portland's Code Chapter 16.40 regulating the for-hire transportation industry "insure that the public safety is protected, the public need provided, and the public convenience promoted," all of which are legitimate governmental interests.  Portland City Code 16.40.010(A) (Moede Affidavit, Exhibit A).  Prescribing minimum fares and a reservation window are a rational way to promote these legitimate interests because they "provide for the safe, fair and efficient operation of private 'for-hire' transportation services." *Id.*  Legislation enters this Court with a presumption of constitutionality, and a mere rational relationship to a legitimate interest is sufficient to uphold the law.  Here, the plain language of the City Code provision includes sufficient language upon which this Court can infer that prescribing minimum fares and a reservations window present a rational means to promote the

Page  12  –   MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' RULE 12 MOTIONS
         TO DISMISS PLAINTIFFS' COMPLAINT

legitimate interests of public safety, public need, and public convenience. Therefore, plaintiffs'
substantive due process claims should be dismissed with prejudice.

      C.     <u>Equal Protection</u>

      Plaintiffs' first cause of action is labeled "Equal Protection of Law" and is found in
paragraphs 76-84 of the Complaint. Plaintiffs claim that the $50 minimum fare, 35% increased
fare and 60 minute wait period violate plaintiffs "right to equal protection of law under the
Fourteenth Amendment to the U.S. Constitution." (*See Complaint, ¶¶ 79-81.*) As will be
outlined below, plaintiffs' Equal Protection cause of action should be dismissed with prejudice.

      "The purpose of the equal protection clause of the Fourteenth Amendment is to secure
every person within the State's jurisdiction against intentional and arbitrary discrimination,
whether occasioned by express terms of a statute or by its improper execution through duly
constituted agents." *Lazy Y Ranch Ltd. v. Behrens*, 546 F.3d 580, 588 (9th Cir. 2008) (*quoting
Village of Willowbrook v. Olech*, 528 U.S. 562, 564, 120 S.Ct. 1073 (2000). "Generally, an
equal protection claim must allege a classification pursuant to which people who are otherwise
similarly situated in all relevant respects are treated differently because of a particular
characteristic." *Nordlinger v. Hahn*, 505 U.S. 1, 10, 112 S.Ct. 2326 (1992). "The first step in
equal protection analysis is to identify the state's classification of groups." *Country Classic
Dairies v. Milk Control Bureau*, 847 F.2d 593, 596 (9th Cir. 1988). "Unless a classification
trammels fundamental personal rights or is drawn upon inherently suspect distinctions such as
race, religion, or alienage, our decisions presume the constitutionality of the statutory
discriminations and require only that the classification challenged be rationally related to a
legitimate state interest." *City of New Orleans v. Dukes*, 427 U.S. 297, 303, 96 S.Ct. 2513, 2516-
17 (1976). "The Supreme Court has held that the right to pursue a calling is not a fundamental
right for purposes of the Equal Protection Clause." *County Classic*, 847 F.2d at 596.

      "The standard for judging the constitutionality of a statute ... which regulates economic
activity, is the same under the due process, equal protection or commerce clauses." *Burlington*

Page  13  –   MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' RULE 12 MOTIONS
              TO DISMISS PLAINTIFFS' COMPLAINT

*Northern R.R. Co. v. Department of Public Serv. Regulation,* 763 F.2d 1106, 1109 (9th Cir. 1985). "Under rational basis review, the Equal Protection Clause is satisfied if: (1) 'there is a plausible policy reason for the classification,' (2) 'the legislative facts on which the classification is apparently based rationally may have been considered to be true by the governmental decisionmaker,' and (3) 'the relationship of the classification to its goal is not so attenuated as to render the distinction arbitrary or irrational.'" *Bowers,* 671 F.3d at 917 (*quoting Nordlinger,* 505 U.S. at 10, 112 S.Ct. 2326). "In the area of economic and social welfare, a State does not violate the Equal Protection Clause merely because the classifications made by the law are imperfect." *Bowers,* 671 F.3d at 918 (*quoting Dandridge v. Williams*, 397 U.S. 471, 485, 90 S.Ct. 1153 (1970)). As long as the classification has some rational basis, it will "not offend the Constitution simply because the classification is not made with mathematical nicety or because in practice it results in some inequality." *Bowers*, 671 F.3d at 918 (*quoting U.S. R.R. Ret. Bd. v. Fritz*, 449 U.S. 166, 175, 101 S.Ct. 453 (1980)).

"In an equal protection case ... those challenging the legislative judgment must convince the court that the legislative facts on which the classification is apparently based could not reasonably be conceived to be true by the governmental decisionmaker." *Merrifield,* 547 F.3d at 989 (*quoting Vance v. Bradley*, 440 U.S. 93, 111, 99 S.Ct. 939 (1979)). All that is needed to uphold the state's classification scheme is to find that there are "plausible," "arguable," or "conceivable" reasons which may have been the basis for the distinction. *Brandwein v. California Board of Osteopathic Examiners,* 708 F.2d 1466, 1472 (9th Cir. 1983).

"Equal protection 'does not demand for purposes of rational-basis review that a legislature or governing decisionmaker actually articulate at any time the purpose or rationale supporting its classification.'" *Nordlinger v. Hahn*, 505 U.S. 1, 15, 112 S.Ct. 2326 (1992). The determination of whether a rational connection exists between a state statute and legitimate state interests is a question of law, not one on which the reviewing court must conduct an evidentiary hearing. *Heller v. Doe*, 509 U.S. 312, 319-20 (1993). "In other words, a legislative choice is not

Page  14 –   MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' RULE 12 MOTIONS
TO DISMISS PLAINTIFFS' COMPLAINT

subject to courtroom fact-finding and may be based on rational speculation unsupported by evidence or empirical data." *F.C.C. v. Beach Communications, Inc.*, 508 U.S. 307, 315, 113 S.Ct. 2096 (1993) (*citing Vance v. Bradley*, 440 U.S., at 111, 99 S.Ct. at 949).

      1.    <u>Laws Surviving Rational Basis Review</u>

      The Supreme Court denied an equal protection challenge to a New Orleans ordinance that banned food carts in the French Quarter, but exempted those who had operated for more than eight years, *Dukes*, 427 U.S. at 306, 96 S.Ct. 2513.  The Court found the city's stated purpose, "to preserve the appearance and custom valued by the Quarter's residents and attractive to tourists," was legitimate, and that it was rational to ban food carts to promote that interest.  *Id.* at 304-05.  Further, the court found that the "grandfather provision," which allowed food cart vendors who had operated for more that eight years to remain in business, was rational because the two vendors who qualified for the exemption had operated for more than 20 years and "had themselves become part of the distinctive character and charm" that distinguishes the French Quarter.  *Id.* at 305.

      The Ninth Circuit upheld an Oregon law that treated similarly situated landowners differently in *Bowers*, 671 F.3d at 918.  The court found that the state's interest in balancing the protection of property owners' interests against the preservation of Oregon's natural resources was legitimate.  *Id.*  The court held that it was rational for Oregon to apply blanket standards to differently situated landowners to promote its underlying interest.  *Id.* at 918.

      Licensed chiropractors in the State of Oregon brought an equal protection claim challenging the setting of fee guidelines and maximum fee schedules in *Llewellyn v. Crothers*, 765 F.2d 769, 771 (9th Cir. 1985).  The court upheld the lower court's dismissal of the equal protection claim, holding that the law was rational in setting different payment schedules between chiropractors and other healthcare providers because chiropractors have distinctive qualifications and licensing requirements compared to other healthcare providers.  *Id.* at 776.

//////

Page  15  –   MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' RULE 12 MOTIONS
                    TO DISMISS PLAINTIFFS' COMPLAINT

Courts also struck down equal protection challenges in *Lieb v. Hillsborough Public Transp. Com'n*, 558 F.3d 1301, 1306 (11th Cir. 2009) (upholding law requiring limousines be "luxury" vehicles, refusing to grant exception for plaintiff's Prius), and *Greater Houston Small Taxicab Co. Owners Ass'n v. City of Houston, Tex.*, 660 F.3d 235, 240 (5th Cir. 2011) (upholding law distributing new taxicab licenses based on the size of the taxi cab company).

    2.    Laws Failing Rational Basis Review

While rational basis review is extremely deferential to lawmakers, "where simple economic protectionism is effected by state legislation, a virtually *per se* rule of invalidity has been erected." *City of Philadelphia v. New Jersey*, 437 U.S. 617, 624, 98 S.Ct. 2531 (1978).  For example, the Ninth Circuit struck down a portion of a state regulatory scheme for violating the equal protection rights of pest controllers in *Merrifield,* 547 F.3d at 992 (9th Cir. 2008)[1].  Plaintiff engaged in "non-pesticide animal damage prevention and bird control," and complained that he should be exempt from the mandatory licensing provision because, in his view, the licensing scheme was intended only for pesticide based animal control.  *Id.* at 980.  The court found that the law discriminatorily required non-pesticide exterminators that handle vertebrate animals such as "bats, raccoons, skunks, and squirrels" to obtain a license while expressly  exempting non-pesticide pest controllers of "mice, rats, or pigeons."  *Id.* at 988.

The court went on to hold that the law failed rational basis because it singled out certain pest controllers who handle three specific types of vertebrate pests from others and therefore it economically favored certain groups at the expense of others.  *Id*. at 991.  The court distinguished the case from *Dukes*, *supra*, on the grounds that the classification in *Dukes* was based upon when a person began his or her business, where in this case the classification was based upon what type of pests the business exterminates.  *Id.*  Further, the court held that in Dukes, there was a legitimate government interest in preserving the charm of the French Quarter, where here the state's rationale for requiring the plaintiff to take the licensing exam (public

---

[1] The court upheld the licensing regime on substantive due process grounds.  *Id.*

PORTLAND CITY ATTORNEY'S OFFICE
1221 SW 4TH AVENUE, RM 430
PORTLAND, OREGON 97204
(503) 823-4047

health and safety) was irrational because it exempted those most likely to be exposed to pesticides. *Id.* at 991-92. The court pointed out that because *Craigmiles* (*Craigsmiles v. Giles*, 312 F.3d 220 (6th Cir. 2002)) and *Cornwell* (*Cornwell v. Hamilton*, 80 F.Supp.2d 1101 (S.D. Cal. 1999)) "involved plaintiffs arguing that they were *different* from other groups and should not be treated the *same,* these cases are not directly applicable to Merrifield's claim that he is the *same* as other non-pesticide exterminators and is being treated *differently*." *Id.* at 986. Nevertheless, the Ninth Circuit went on to positively cite *Craigmiles*:

> "Moreover, just as in *Craigmiles*, the licensing scheme in this case specifically singles out pest controllers like Merrifield in the exemption legislation. Needless to say, this type of singling out, in connection with a rationale so weak that it undercuts the principle of non-contradiction, fails to meet the relatively easy standard of rational basis review. Indeed, the record highlights that the irrational singling out of three types of vertebrate pests from all other vertebrate animals was designed to favor economically certain constituents at the expense of others similarly situated, such as Merrifield"

*Merrifield.* at 991. The court's conclusion, though in a footnote, is worth noting in full:

> We conclude that mere economic protectionism for the sake of economic protectionism is irrational with respect to determining if a classification survives rational basis review. In doing so, we agree with the Sixth Circuit in *Craigmiles* and reject the Tenth Circuit's reasoning in *Powers v. Harris*, 379 F.3d 1208, 1218-19 (10th Cir. 2004). *Powers* rejected the Sixth Circuit's conclusion that economic protectionism for its own sake is irrational. *Id.* We do not disagree that there might be instances when economic protectionism might be related to a legitimate governmental interest and survive rational basis review. However, economic protectionism for its own sake, regardless of its relation to the common good, cannot be said to be in furtherance of a legitimate governmental interest.

*Id.* at 991, n. 15.

### 3.    Plaintiffs Fail To State a Claim

To validly state an Equal Protection claim, a plaintiff must allege that the government makes a classification that treats similarly situated entities differently because of a particular trait. *Nordlinger*, 505 U.S. at 10, 112 S.Ct. 2326. It is unclear what classification plaintiffs allege that the City of Portland makes. It appears that plaintiffs allege that the City of Portland

Page  17 –   MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' RULE 12 MOTIONS TO DISMISS PLAINTIFFS' COMPLAINT

has made a classification that includes all for-hire transportation companies and that executive sedan and limousine companies are treated differently than taxicab companies who are also included in that class of business.

Plaintiffs' Equal Protection cause of action should be dismissed with prejudice for three reasons. First, plaintiffs are not similarly situated in all relevant respects to taxicab companies. Second, the City of Portland's classifications have a conceivable rational basis that promotes a legitimate governmental interest. Third, to the extent that plaintiffs claim that any rational basis for the challenged Code provisions and rules is rendered irrational by virtue of exemptions granted to taxicab companies, their cause of action should be dismissed because no such exemptions exist.

Plaintiffs' Equal Protection cause of action must be dismissed because executive sedan and limousine companies are not similarly situated in all relevant respects to taxicabs. Chapter 16.40 of the Portland City Code regulates all private, for-hire transportation companies including taxicabs, executive sedans, limousines, pedicabs, shuttles, and horse-drawn carriages. An executive sedan is defined as "a large expensive passenger sedan or full-sized sports utility vehicle (SUV) commonly recognized by the limousine industry as an executive vehicle and used to provide ongoing luxury transportation." Portland City Code 16.40.030(R). A limousine is defined as "an Executive Sedan whose chassis and wheelbase have been altered by a Qualified Vehicle Modifier (QVM) program participant (or its equivalent) beyond the length of the manufacturer's original specifications, whether at the time of manufacture or after, and which is commonly recognized by the limousine industry as a 'limousine.'" Portland City Code 16.40.030(F). A taxicab is defined as "any vehicle that carries passengers for-hire where the destination and route traveled may be controlled by a passenger and the fare is calculated on the basis of an initial fee, distance traveled, waiting time, or any combination thereof." Portland City Code 16.40.030(PP). By definition, these industries are not similarly situated, as sedans and limousines must be "expensive" vehicles that provide "luxury" transportation, where taxicabs do

Page 18 –   MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' RULE 12 MOTIONS
              TO DISMISS PLAINTIFFS' COMPLAINT

not. This Court should dismiss plaintiffs' Equal Protection cause of action with prejudice because executive sedan and limousine companies are not similarly situated to taxicab companies.

Next, plaintiffs' Complaint should be dismissed because there is a conceivable rational basis by which the City of Portland promotes a legitimate governmental interest. Indeed, the Court needs only to find "plausible, arguable, or conceivable reasons which may have been the basis for the distinction" to uphold the challenged Code provisions and rules. *Brandwein,* 708 F.2d at 1472. Here, the Code provisions and rules exist to "promote competition within the industry," "promote welfare," and "ensure a balanced transportation system across the City of Portland." Portland City Code 16.40.010(A) (Moede Affidavit, Exhibit A). The minimum fares and reservation windows serve as a rational means to advance those legitimate interests because they ensure that taxicab companies that service all consumers as they must take anyone that asks (all trips for all citizens), which the City has identified as a vital component of its transportation network, can remain economically viable in spite of competition from executive sedan and limousine companies that are subject to far less regulation. The challenged Code provisions and rules clearly pass the rational basis test and this Court should therefore dismiss plaintiffs' Equal Protection cause of action with prejudice.

Finally, this Court should dismiss plaintiffs' Equal Protection cause of action to the extent that it alleges that any rational basis for the challenged Code provisions and rules is rendered irrational because the laws "exempt" taxicabs and other private for-hire transportation companies, because the plain language of the Code provisions and rules include no such exception. The Code provisions and rules plainly apply only to executive sedan and limousine companies, and include no express exemption language. (See Exhibits A and B, Moede Affidavit.)

Taxicab companies are not exempt from the minimum fare and reservation window requirements, but rather subject to specific regulations directed toward their unique form of

Page  19 –    MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' RULE 12 MOTIONS
           TO DISMISS PLAINTIFFS' COMPLAINT

business.  For example, taxicab companies are not exempt from the minimum fare requirement,

but instead are subject to a *maximum* fare requirement.  Portland City Code 16.40.290,

16.40.310.  Similarly, taxicab companies are not exempt from a one hour reservation window,

but rather subject to a separate Code provision that requires 24 hour dispatch capable of

providing reasonably prompt service, City-wide, 24-hours a day, 7-days a week, and that

requires that they must accept any service request within the City.  Portland City Code

16.40.270.  No exemption language exists, and plaintiffs' Equal Protection cause of action

should therefore be dismissed.

This case is analogous to *Llewellyn*, 765 F.2d 769 (9th Cir. 1985), in that each respective

industry has "distinctive qualifications and licensing requirements" and therefore each requires

distinct regulatory regimes.  Plaintiffs' Equal Protection cause of action should therefore be

dismissed with prejudice.

## IV.    CONCLUSION

Based upon the foregoing, defendants respectfully request that the Court dismiss

plaintiffs' Complaint in its entirety with prejudice for the reasons outlined in this memorandum.

DATED:  July 24, 2012.

Respectfully submitted,


*s/ J. Scott Moede*
J. SCOTT MOEDE, OSB #934816
Senior Deputy City Attorney
KENNETH A. MCGAIR, OSB # 990148
Deputy City Attorney
Telephone: (503) 823-4047
Of Attorneys for Defendants

PORTLAND CITY ATTORNEY'S OFFICE
1221 SW 4TH AVENUE, RM 430
PORTLAND, OREGON 97204
(503) 823-4047