UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

SPEED'S AUTO SERVICES GROUP, INC.,
d/b/a Towncar.com, an Oregon Corporation,
and FIESTA ENTERPRISES, LLC, d/b/a
Fiesta Limousine, an Oregon Limited
Liability  Company,

                         Plaintiffs,

        v.

CITY OF PORTLAND, OREGON, CITY OF
PORTLAND REVENUE BUREAU, PRIVATE
FOR-HIRE TRANSPORTATION BOARD OF
REVIEW, and THOMAS W. LANNOM, in his
official capacity as Revenue Bureau Director,

                         Defendants.
_____

Case No.: 3:12-CV-738-AC

OPINION AND ORDER

ACOSTA, Magistrate Judge:

*Introduction*

       The sole remaining defendant in this action, City of Portland ("City"), moves to dismiss all

three claims asserted by plaintiffs Speed's Auto Services Group, Inc., ("Speeds") and Fiesta Enterprises, LLC ("Fiesta)(collectively referred to as "Plaintiffs"), in the complaint filed in this court on April 26, 2012 (the "Complaint"). Plaintiffs allege that City regulations governing the provision of private for-hire transportation services create an unfair advantage to taxicab companies and prevent them, as limousine and sedan companies, from pursuing their chosen occupation and constitute economic protectionism in violation of the Fourteenth Amendment. Specifically, Plaintiffs allege that the regulations violate the Equal Protection Clause, the Substantive Due Process Clause, and the Privileges and Immunities Clause.

The court finds that Plaintiffs are unable to allege that they are similarly situated to taxicab companies and, therefore, fail to state a claim under the Equal Protection Clause. Conversely, the court finds that Plaintiffs have adequately alleged a constitutionally-protected interest and that the City's sole purpose in enacting the regulations is economic protectionism and, consequently, have stated a viable claim under the Substantive Due Process Clause. Plaintiffs concede they are unable to state a claim under the Privileges and Immunities Clause, that they asserted such a claim to preserve their right to address the claim on appeal, and that dismissal of the claim is appropriate. Accordingly, the court grants[1] the City's motion to dismiss with prejudice the claims under the Equal Protection Clause and the Privileges and Immunities Clause, and denies the City's motion to dismiss with regard to the Substantive Due Process Clause claim.

*Background*

Plaintiffs are Oregon businesses that transport customers in and around Portland, Oregon,

---

[1]The parties have consented to jurisdiction by magistrate in accordance with 28 U.S.C. § 636(c)(1).

in either sedans or sport-utility vehicles. (Compl. ¶ 11). Both are subject to City ordinances setting minimum fares and wait times for private for-hire transport companies using sedans or limousines which are not applicable to taxicabs. The City's Revenue Bureau ("Bureau"), which is part of the City's Office of Management and Finance, issues permits to private for-hire transportation companies and enforces the City's transportation policies. (Compl. ¶ 16).

The private for-hire transportation regulations ("Regulations"), found in Chapter 16.40 of the Portland City Code,[2] distinguish between a "Limited Passenger Transportation Company" ("LPT Company") and a "Taxicab Company" based primarily on the type of vehicle used to transport the customers. "Taxicab Company" is defined as "any entity operating taxicabs other than as a driver and regardless of whether the vehicles so operated are owned by the company, leased, or owned by individual members of the company." PORTLAND, OR., CITY CODE § 16.40.030(NN) (2012). "LPT Company" is defined as "a for-hire transportation company other than a taxi company." PORTLAND, OR., CITY CODE § 16.40.030(V) (2012). "Taxicab" is defined as "any vehicle that carries passengers for-hire when the destination and route traveled may be controlled by a passenger and the fare is calculated on the basis of an initial fee, distance traveled, waiting time, or any combination thereof." PORTLAND, OR., CITY CODE § 16.40.030(PP) (2012). However, "Limited Passenger Transportation" ("LPT") means "providing for-hire transportation services with non-motorized vehicles or motorized vehicles other than taxicabs." PORTLAND, OR., CITY CODE § 16.40.030(W) (2012). The "motorized vehicles" falling withing the LPT definition include executive sedans and limousines. PORTLAND, OR., CITY CODE § 16.40.030(W) (2012). "Executive Sedan" is defined

_____

[2] The Private For-Hire Transportation Regulations relied on by the court are found in the Portland City Code as of July 24, 2012, and are attached to the Affidavit of J. Scott Moede as Exhibit A.

Page 3 - OPINION AND ORDER                                                           *{SIB}*

as "a large expensive passenger sedan or full-sized sports utility vehicle (SUV) commonly recognized by the limousine industry as an executive vehicle and used to provide ongoing luxury transportation", while a "Limousine" is defined as "an Executive Sedan whose chassis and wheel base have been altered by a Qualified Vehicle Modifier (QVM) program participant (or its equivalent) beyond the length of the manufacturers' original specifications, whether at the time of manufacture or after, and which is commonly recognized by the limousine industry as a 'limousine'". PORTLAND, OR., CITY CODE § 16.40.030(R, X) (2012).

LPT and Taxicab Companies are generally subject to the same treatment with regard to driver permitting, conduct and maximum hours, the renewal of company permits, insurance requirements, financial information, reporting obligations, and the licensing and maintenance of vehicles used by the companies. Both types of companies must keep trip logs but LPT Company logs must have more detail. Taxicab Companies must track the date and time of the initial reservation, and the initial and destination address. PORTLAND, OR., CITY CODE § 16.40.450(C) (2012). LPT Companies must track the customer name, the passenger name if different from the customer name, the date and time of the initial reservation, the date, start and end times of the trip, the initial and destination address, and the fare amount paid. PORTLAND, OR., CITY CODE § 16.40.450(B) (2012).

Taxicab Companies are required to: 1) maintain a twenty-four hour dispatch system capable of providing prompt service in response to telephone requests; 2) provide city-wide service twenty-four hours a day, seven days a week; 3) accept any request for taxicab service from any location within the City; 4) maintain a minimum fleet of fifteen taxicabs of which at least two-thirds must be utilized and in service at all times and of which at least twenty percent must be wheelchair accessible; 5) install, inspect, test, and maintain digital security cameras and taximeters in every

taxicab; 6) equip each taxicab with a top light, seatbelts for every passenger, and signage stating "YOU ARE ON CAMERA. IT IS A FELONY IN OREGON TO ASSAULT A TAXICAB DRIVER"; 7) paint each taxicab the colors unique to the company; and 8) display on both sides of each taxicab the full name of the company, the taxi number, the company telephone number, and the word "taxi", "cab", or "taxicab". PORTLAND, OR., CITY CODE § 16.40.270-330 (2012). Additionally, the regulations set maximum rates Taxicab Companies are allowed to charge for transportation of passengers within City limits. Taxicab Companies are allowed an initial charge of $2.50 for one passenger and $1.00 for each additional passenger, a waiting charge of $30 per hour, and no more than $2.30 per mile. PORTLAND, OR., CITY CODE § 16.40.290(A) (2012).

LPT Companies are only allowed to provide services on a prearranged basis, which means that the "reservation for services was made and documented with the validly permitted driver or transportation company at least 60 minutes prior to the transportation of the customer, with the exception that they may provide on demand service at Portland International Airport if permitted to do so by the Port of Portland or pursuant to a written contract with TriMet, the Port of Portland, a major hotel, or airline company." PORTLAND, OR., CITY CODE § 16.40.460 (2012), Chapter 16.40 Administrative Rules[3] ("Rules") 16.40.460-01. While the regulations provide maximum fares to be charged by Taxicab Companies, LPT Companies are subject to minimum charges of $50 for service between the airport and the City's Fareless Square or the AMTRAK station, and must charge rates at least thirty-five percent higher than the prevailing taxicab rates for the same route. PORTLAND, OR., CITY CODE § Reg. 16.40.480 (2012), Rule 16.40.480-01.

---

[3] The Administrative Rules for Chapter 16.40 of the Portland City Code relied on by the court are attached to the Affidavit of J. Scott Moede as Exhibit B.

The controversy precipitating the filing of this action arose when Plaintiffs offered deals on Groupon.com at a rate less than what a Taxicab Company could charge for the same trip. (Compl. ¶¶ 36, 49). Frank Dufay, Regulatory Program Administrator for the Bureau, promptly notified Plaintiffs that the Groupon.com promotions violated the Regulations. (Compl. ¶¶ 37, 50). Dufay informed Plaintiffs that if they failed to cancel the promotion and, instead, provided transportation at the discounted fares, the City would assess a large penalty ($635,500 for Speed's and $259,500 for Fiesta) and suspend Plaintiffs' company and vehicle permits. (Compl. ¶¶ 38, 51).

Plaintiffs cancelled the Groupon.com promotions, refunded all of the money paid by its Groupon.com customers, and filed this action. (Compl. ¶¶ 39, 53). Plaintiffs allege they would like to offer fares less than the $50 for trips between downtown and the airport and less than 35% more than the prevailing rate for taxicabs, and provide service to customers who request transportation immediately, rather than sixty minutes from the time of the request. (Compl. ¶¶ 40, 41, 43, 54, 55, 57). Plaintiffs assert that because of the rate restrictions, they are unable to reward loyal customers and have lost an effective means of promoting services to new customers through special discounts and promotions. (Compl. ¶¶ 42, 56). They also argue that the sixty-minute time limit prevents them from offering the flexibility desired by their customers and, consequently, they have lost, and will continue to lose, potential customers as well as the goodwill of existing customers. (Compl. ¶¶ 43-45, 57-59).

Plaintiffs assert that the Regulations restricting the fares to be charged by LPT Companies and requiring a sixty-minute wait time on LPT Companies "address no legitimate health or safety concerns" and "exist only to protect taxicabs from competition by limousines and sedans." (Compl. ¶ 5). Plaintiffs specifically allege that the City's actions "severely limit Plaintiffs' ability to market

and promote their services with online discounts, threatening the economic viability of Plaintiffs' businesses and depriving Portland's consumers of affordable limousine and sedan service" and "deny Plaintiffs their economic liberty – the right to pursue their chosen occupation free from unreasonable government restriction – in violation of the Fourteenth Amendment to the United States Constitution." (Compl. ¶¶ 7, 8).

*Legal Standard*

A well-pleaded complaint requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2)(2011). A federal claimant is not required to detail all factual allegations; however, the complaint must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). "Factual allegations must be enough to raise a right to relief above the speculative level." *Id*. While the court must assume that all facts alleged in a complaint are true and view them in a light most favorable to the nonmoving party, it need not accept as true any legal conclusion set forth in the complaint. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Additionally, a plaintiff must set forth a plausible claim for relief – a possible claim for relief will not do. "In sum, for a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Service*, 572 F.3d 962, 969 (9th Cir. 2009) (quoting *Iqbal*, 556 U.S. at 678); *Sheppard v. David Evans and Assoc.*, No. 11-35164, 2012 WL 3983909, at *4 (9th Cir. Sept. 12, 2012) ("The Supreme Court has emphasized that analyzing the sufficiency of a complaint's allegations is a 'context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" (quoting *Iqbal*, 556 U.S. at

679)).

*Discussion*

## I.  Equal Protection Clause

In their First Claim for Relief, Plaintiffs allege that the Regulations violate the Equal Protection Clause of the Fourteenth Amendment ("Equal Protection Clause") by imposing minimum charges and wait times on sedans and SUVs while exempting taxicabs and other private for-hire transportation vehicles from these restrictions.   The City argues that Plaintiffs are unable to state a claim under the Equal Protection Clause because LPT Companies are not similarly situated to Taxicab Companies; a conceivable reason for the Regulations which is rationally related to a legitimate governmental interest exists; and the City does not have an exemption for taxicabs or other private for-hire transportation vehicles.[4]  Plaintiffs argue that the City is unable to rely on the statement of purpose found in the Regulations to provide a rationally-related reason for the Regulations in the setting of a motion to dismiss and that this case must be decided at the summary judgment stage, or trial, to allow the parties to present evidence with regard to the City's reasons for creating the Regulations.

The Equal Protection Clause  commands that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. CONST. amend. XIV, § 1.  In other words, states are required to treat all persons similarly situated in a like manner. *Nordlinger v. Hahn*, 505 U.S. 1, 10 (1992). A plaintiff generally alleges a violation of the Equal Protection Clause by asserting that they are a member of a class made up of similarly-situated individuals and that defendants

_____

[4] Plaintiffs do not argue that an exemption exists.  Accordingly, this argument need not, and will not, be addressed in this Findings and Recommendation.

intentionally acted in a way that infringes on the constitutional rights of the class as opposed to others, resulting in disparate treatment.  *Lee v. City of Los Angeles*, 250 F.3d 668, 686 (9th Cir. 2001).

The City argues that Plaintiffs are unable to state a claim under the Equal Protection Clause because they have failed to allege that they are similarly situated to Taxicab Companies.  Plaintiffs assert, without specifically alleging, that LPT Companies are similarly situated to Taxicab Companies and, therefore, should be treated equally.  Plaintiffs specifically allege that the fare and waiting time restrictions found in the Regulations place unreasonable burdens on LPT Companies which threaten the economic viability of such businesses.  However, Plaintiffs ignore the numerous restrictions and requirements placed on Taxicab Companies that are not applicable to LPT Companies.

For example, Taxicab Companies are required to maintain twenty-four hour dispatch systems; provide prompt response to all telephone request twenty-four hours a day, seven days a week; and manage a minimum fleet of fifteen taxicabs with at least two-thirds in service at all times and twenty percent wheelchair accessible.  Also, the Regulations set minimum fares for Taxicab Companies limiting charges to $2.50 for one passenger, $1.50 for each additional passenger, and no more than $2.30 per mile.

Plaintiffs do not argue that they should be subject to all of the restrictions or requirements imposed on Taxicabs Companies.  Rather, they complain only about those that are not to their benefit.  They seek the ability to charge less than the $50 minimum airport fare or thirty-five percent increase over the minimum Taxicab fare but they do not want to be subject to the maximum rates applicable to Taxicabs.  Plaintiffs seek to be allowed to provide prompt service to its customers, but

apparently do not want to be required to provide twenty-four hour service, seven days a week, or maintain a fleet of fifteen vehicles.

The fact that Taxicab Companies are required to comply with these additional restrictions found in the Regulations while the LPT Companies are subject to fewer and less onerous restrictions supports a finding that LPT Companies are not similarly situated to Taxicab Companies. The Equal Protection Clause is intended to keep "governmental decisionmakers from treating differently persons who are in all relevant respects alike." *Nordlinger*, 505 U.S. at 10. The United States Supreme Court recognized that traditional political parties and newer political parties faced different challenges and therefore, could be treated differently without violating the Equal Protection Clause. *Jennes v. Fortson*, 403 U.S. 431, 441-42 (1971). Similarly, the Ninth Circuit has held that recipients of benefits from different food assistance programs; owners of beach property located either within or without state-created boundaries; immigrants who were properly and those who were improperly granted green cards; and partisan or independent candidates for public office, are not similarly situated for the purposes of the Equal Protection Clause. *Pimentel v. Dreyfus*, 670 F.3d 1096, 1106-07 (2012); *Wright v. Incline Vill. Gen. Improvement Dist.*, 665 F.3d 1128, 140 (2011); *Kim v. Holder*, 603 F3d 1100, 1104 (2010); *Van Susteren v. Jones*, 331 F.3d 1024, 1027 (2003). And Chief Judge Aiken of this court has held that applicants for legislative benefits filed before legislation action affecting the benefits were not similarly situated to applicant filing for such benefits after the legislation action. *Charles Wiper Inc. v. Eugene*, No. 08-6226-AA, 2011 WL 1541305, *8 (Apr. 21, 2011). The distinction between Taxicab Companies and LPT Companies created by the different regulatory schemes governing the companies is similar to the differences addressed by the courts in each of these cases and requires a similar result.

The court finds that Plaintiffs are not similarly situated to Taxicab Companies in that they are not subject to similar requirements or restriction under the Regulations.  Accordingly, Plaintiffs have failed to allege a valid claim under the Equal Protection Clause and the City is entitled to dismissal of this claim with prejudice.

## II.  Substantive Due Process Clause

In their Second Claim for Relief, Plaintiffs assert that the Regulations violate the Substantive Due Process Clause of the Fourteenth Amendment ("Substantive Due Process Clause") because the minimum charges and wait times prevent them from pursuing their chosen legitimate occupation. The Substantive Due Process Clause provides that no state shall "deprive any person of life, liberty or property without due process of law."  U.S. CONST.  amend. XIV, § 1.

The City argues that Plaintiffs have not alleged, and are unable to establish, that the Regulations are a complete barrier to Plaintiffs' protected interest in running a limousine company in the City of Portland based on the allegations that Plaintiffs are still engaged in that business. Alternatively, the City argues that Plaintiffs have failed to adequately allege that the Regulations are not rationally related to a legitimate governmental interest but are based solely on a desire to economically protect Taxicab Companies from the competition of LPT Companies.

### A.  Constitutionally Protected Interest

The City contends that because Plaintiffs allege they are currently engaged in the limousine business, they are unable to adequately allege a deprivation of a constitutionally protected right in support of their claim under the Substantive Due Process Clause.  "To state a substantive due process claim, the plaintiff must show as a threshold matter that a state actor deprived it of a constitutionally protected life, liberty or property interest."  *Shanks v. Dressel*, 540 F.3d 1082, 1087 (9th Cir. 2008).

The "liberty component of the Fourteenth Amendments Due Process Clause includes some generalized due process right to choose one's field of private employment" but mere interruption of a right to engage in a calling is insufficient to support a substantive due process claim. *Conn v. Gabbert*, 526 U.S. 286, 291-92 (1999). Where the failure to comply with a regulation results in a complete bar to the pursuit of an occupation, a person's liberty interest in pursuing such occupation is sufficiently impacted to support a claim under the Substantive Due Process Clause. *Dittman v. State of California*, 191 F.3d 1020, 1029 (9th Cir. 1999). Additionally, "[business goodwill] is a property interest entitled to protection; the owner cannot be deprived of it without due process." *Wedges/Ledges of Cal., Inc. v. City of Phoenix*, 24 F.3d 56, 65 (9th Cir. 1994)(quoting *Soranno's Gasco, Inc.v. Morgan*, 874 F.2d 1310, 1316 (9th Cir. 1989)).

Plaintiffs allege that Dufay, after discovering their Groupon.com promotions which admittedly violated the minimum-fair restrictions, informed them that if they failed to cancel the promotion and refund all the money collected, the City would suspend Plaintiffs' company and vehicle permits, thereby preventing Plaintiffs from engaging in the limousine business. These allegations are sufficient to establish that the Regulations would pose a complete bar to Plaintiffs' chosen occupation if not complied with. *See Dittman*, 191 F.3d at 1029-30 (requirement that person provide social security number to state to practice acupuncture was "complete barrier to entry into the profession" and adequate to implicate a person's liberty interest in chosen occupation). Additionally, Plaintiffs allege that "[a]s a result of [the City's] unconstitutional restrictions on their economic liberty, Plaintiffs have lost and are continuing to lose business income and customer goodwill." (Compl. ¶ 62.) Viewing the factual allegations alleged in the Complaint as true and in a light most favorable to Plaintiffs, the court finds that Plaintiffs have adequately alleged a

constitutionally protected interest in both their right to pursue their chosen occupation and in the goodwill associated with their limousine businesses.

### B. Economic Protectionism

The City also argues that Plaintiffs have failed to adequately allege that the minimum-fare and wait-time requirements were enacted solely as a result of the City's desire to economically protect Taxicab Companies from the competition of LPT Companies.  To analyze a claim brought under the Substantive Due Process Clause, courts apply one of two levels of scrutiny.  If the challenged legislative act impinges upon a fundamental right, the court must apply strict scrutiny – the statute must be narrowly tailored to serve a compelling and legitimate state interest.  *Reno v. Flores*, 507 U.S. 292, 301-02 (1993).  If the challenged law infringes some other non-fundamental liberty interest, such as the right to engage in a chosen occupation, the court applies a less stringent standard – the legislation must be "clearly arbitrary and unreasonable, having no substantial relation to the public health, safety, morals, or general welfare."  *Wedges/Ledges,* 24 F.3d at 65 (citations omitted).  Here, Plaintiffs assert that the City has infringed on their right to engage in a specific occupation.  Accordingly, minimum-fair and wait-time requirements will be constitutional if there is a rational relationship between the requirements and some legitimate governmental purpose.[5]

Plaintiffs allege that; (1) "[e]ach of [the challenged] restrictions was designed to and serves only to protect taxicab companies from competition"; (2) "[o]n information and belief, Portland's taxicab companies complained to the City about the negative impact that affordable, prompt

---

[5] Plaintiffs concede that this standard applies by alleging in the Complaint that the Substantive Due Process clause "protects every American's right to pursue legitimate occupations, subject only to regulations that are rationally related to a legitimate governmental purpose." (Compl. ¶ 86.)

limousine and sedan services have on the profits of taxicab companies and they support each of the three challenged restrictions"; and (3)"[e]ach of these challenged restrictions was designed to guarantee a certain amount of revenue to taxicab companies at the expense of limousine sedan services." (Compl. ¶¶ 22-24.) Plaintiffs further allege that the City's "unconstitutional regulations do not address any health, safety, or consumer protection concerns nor are they rationally related to any legitimate governmental interest. Rather, they exist only to shield taxicab companies from Plaintiff's honest competition." (Compl. ¶ 70.) "Courts have repeatedly recognized that protecting a discrete interest group from economic competition is not a legitimate governmental purpose." *Craigmiles v. Giles*, 312 F.3d 220 (6th Cir. 2002). Plaintiffs' allegations that economic protectionism is the sole purpose for the three challenged restrictions are sufficient to state a claim under the Substantive Due Process Clause.

Plaintiffs have adequately alleged a constitutionally protected interest and that the City's ole purpose in enacting the three challenged restrictions is to protect taxicabs from competition by limousine and sedan services. The court finds that Plaintiffs have stated a valid claim under the Substantive Due Process Clause and that the City's motion to dismiss should be denied.

III.  Privileges and Immunities Clause

Plaintiffs allege in their Third Claim for Relief that the minimum-fare and minimum wait time requirements imposed upon them by the Regulations violate the Privileges and Immunities Clause applicable to the states under the Fourteenth Amendment (the "Privileges and Immunities Clause"). The Privileges and Immunities Clause provides: "No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States . . . ." U.S. CONST. amend. XIV, § 1. The Privileges and Immunities Clause narrowly applies to privileges and

immunities of federal citizenship such as the right of citizens to vote in federal elections, to enter public lands, and to petition Congress. *Merrifield*, 547 F.3d at 983 (citing *Slaughter-House Cases*, 83 U.S. (16 Wall.) 36 (1872)).  One of the primary rights protected by the Privileges and Immunities Clause is the right of an individual to become a citizen of any State and enjoy all of the rights and privileges of any other citizen of that State.  *Saenz v. Roe*, 526 U.S. 489, 503 (1999) (citing *Slaughter-House Cases*, 83 U.S. at 80).  Stated another way, the Privileges and Immunities Clause "does not provide for, and does not allow for, degrees of citizenship based on the length of residence." *Id*. at 506, quoting *Zobel v. Williams*,  457 U.S.  55, 69 (1982).  The Ninth Circuit has since limited its consideration of claims brought under the Privileges and Immunities Clause to those depending on the right to travel.  *Merrifield*, 547 F.3d at 984.

Plaintiffs concede that the law as it currently exists defeats their Third Claim for Relief. "There can be little dispute that the Supreme Court's decision in the *Slaughter-House Cases* forecloses this claim . . . ." (Pls.' Resp. To Def.'s Motion to Dismiss 16).  However, Plaintiffs opine the *Slaughter-House Cases* are ripe for reconsideration and represent they merely asserted the claim to preserve it for further review.  The court notes the claim has been alleged and is not well-taken under current case law.  Accordingly, the court grants the City's motion to dismiss Plaintiffs' Third Claim for Relief.

*Conclusion*

The City's motion (#16) to dismiss is GRANTED with prejudice with regard to  Plaintiffs' claims under the Equal Protection Clause and the Privileges and Immunities Clause (First and Third

/ / / / /

/ / / / /

Claims for Relief), and DENIED with regard to the Substantive Due Process Clause claim (Second

Claim for Relief).

DATED this 30th day of April, 2013.


_____
        /s/ John V. Acosta
        JOHN V. ACOSTA
    United States Magistrate Judge